DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDEKEHR, LLP
*Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Julie C. Curley, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                   Chapter 11
                                                         Case No. 16-23144(RDD)

LIFSCHULTZ ESTATE MANAGEMENT LLC,

                            Debtor.
------------------------------------------------------------X

## LIQUIDATING CHAPTER 11 PLAN

Lifschultz Estate Management LLC (the "Debtor") hereby proposes the following

Liquidating Chapter 11 Plan pursuant to the provisions of Title 11 of Chapter 11 of the

United States Code.

### ARTICLE I
### DEFINITIONS

For the purposes of this Plan, and the Disclosure Statement simultaneously filed

by the Debtor, the following terms shall have the respective meanings set forth below

(such meanings to be equally applicable to the singular and plural forms of the terms

defined, unless the context otherwise requires):

1.1      "Administrative Claims" shall mean all costs and expenses of administration

of the chapter 11 case Allowed under sections 503(b) or 330(a) of the Code and that are

entitled to priority under section 507(a)(2) of the Code.

1.2      "Allowed" shall mean that portion of a Claim or Interest that, (i) has been

timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.3     "Bankruptcy Code" shall mean shall mean Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Case.

1.4     "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, White Plains Division.

1.5     "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Case

1.6     "Broker" shall mean any duly licensed professional real estate broker, engaged by the Debtor.

1.7     "Cash" shall mean legal tender of the United States of America or cash equivalents.

1.8      "Chapter 11 Case" shall mean the above captioned proceeding.

1.9     "Claim" is defined in section 101(5) of the Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under sections 550 and 553 of the Code and any

2

claim against the Debtor that does not arise until after the commencement of the chapter

11 case for a tax entitled to priority under section 507(a) of the Code.

1.10    "Closing" shall mean the closing on the refinance or sale of the Property,

whether such sale is effectuated  through a Sale Contract or auction.

1.11    "Code" shall mean the Bankruptcy Code, Title 11 U.S.C. section 101 et. seq.

as amended from time to time and applicable to this case.

1.12    "Confirmation Date" shall mean the date upon which the Confirmation Order

is entered by the Bankruptcy Court.

1.13    "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant

to section 1129 of the Code confirming the Plan.

1.14    "Credit Bid" shall mean the rights of LSF9 (as defined below) under section

363(k) of the Code, to bid all or a portion of its Allowed Secured Claim at the auction to

be conducted pursuant to Articles III and IV of the Plan.

1.15    "Debtor" shall mean Lifschultz Estate Management LLC.

1.16    "Disbursing Agent" shall mean DelBello Donnellan Weingarten Wise &

Wiederkehr, LLP, who shall act in such capacity in order to effectuate the payment of

distributions under the Plan.

1.17    "Disputed" shall mean a Claim or Interest, or any portion of a Claim or

Interest, that is not Allowed.

1.18    "Distribution Fund" shall mean the net proceeds of sale or refinance of the

Property.

1.19     "Effective Date" shall mean the date upon which the Confirmation Order

becomes a Final Order.

3

1.20     "Final Order" shall mean an order or judgment which has not been stayed and as to which order or judgment the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for review or rehearing is pending or in the case of an appeal, any such appeal or petition for review, rehearing or certiorari has been dismissed.

1.21     "Impaired" shall mean a Claim or class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.22     "Interest" shall mean the rights of the members of the Debtor.

1.23     "LSF9" shall mean LSF9 Master Participation Trust.

1.24      "LSF9 Allowed Secured Claim" shall mean the Secured Claim of LSF9 in an Allowed amount no less than $10,161,208.00 as of the Petition Date,  plus accrued per diem interest at the statutory state judgment rate of 9% per annum from and after the Petition Date until paid, plus its costs and reasonable attorneys' fees, which Claim is secured by a lien on and against the Property.

1.25     "Petition Date" shall mean August 23, 2016.

1.26     "Plan" shall mean this Liquidating Chapter 11 Plan and any amendments hereto or modifications hereof made in accordance with the provisions of the Code.

1.27     "Priority Claim" shall mean a Claim, other than an Administrative Claim, that is entitled to priority under section 507 of the Code.

1.28     "Pro Rata" shall mean proportionally according to the total amount of Allowed Claims or Allowed Equity Interests in a particular Class.

1.29     "Professionals" shall mean those persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the

4

Confirmation Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation has been Allowed by the Bankruptcy Court pursuant to sections 503(b)(2), (4) or 506(c) of the Code.

1.30    "Property" shall mean the real property and improvements hereon located at 220 Hommocks Road, Larchmont, New York.

1.31    "Sale Closing Date" shall mean a date that is the earlier of (i) February 27, 2018 if the Property is refinanced or sold pursuant to a private sale, or (ii) May 30, 2018 if the Property is sold at an auction pursuant to Article 4.2(b) of the Plan.

1.32    "Sale Contract" shall mean a written agreement entered into between the Debtor and a third party in an amount not less than the LSF9 Allowed Secured Claim. The Sale Contract shall provide for a deposit that is no less than five percent (5%) of the purchase price, to be held by the Disbursing Agent, unless LSF9 (or its nominee) is the successful bidder at an auction.  The deposit shall be made in cash or official bank, certified or cashiers check (collectively, "Acceptable Funds") and shall be delivered to the Disbursing Agent upon execution of the Sale Contract.

1.33    "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by Section 521 of the Code and Bankruptcy Rule 1007, and all amendments thereto.

1.34    "Secured Claim" shall mean a Claim secured by a valid, perfected and enforceable lien in the assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such assets as determined by the Bankruptcy Court pursuant to section 506(a) of the Code or acknowledged by the Debtor in writing or provided for in this Plan.

1.35     "Third Party Highest Bidder" shall mean a party other than LSF9 (or its nominee) who is the highest bidder at an auction conducted pursuant to Article 4.2 of the Plan.

1.36     "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim including, without limitation, Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

## ARTICLE II

## DESIGNATION OF CLAIMS AND INTERESTS

All holders of Claims and Interests against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**Class 1:** shall consist of the Allowed Secured Claim of LSF9.

**Class 2:** shall consist of the Allowed Secured Claim of Lawrence Lifschultz, if any, to the extent provided for by section 506(a) of the Code.

**Class 3:** shall consist of all Allowed Unsecured Claims, including any deficiency Claims of Lawrence Lifschultz pursuant to section 506(a) of the Code.              .

**Class 4:** shall consist of all Allowed Interests in the Debtor.

In accordance with section 1123(a)(1) of the Code, Administrative Claims and Priority Claims have not been classified and thus are excluded from these Classes.

## ARTICLE III - TREATMENT OF CLAIMS UNDER THE PLAN

**3.1 Satisfaction of Claims.**  The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction their respective Claims against the

6

Debtor.

a)  <u>Allowed Administrative Claims other than Claims of Professionals:</u>  These

Allowed Claims shall be paid in the ordinary course and according to the terms and

conditions of the respective contracts with respect to those Claims.

b)  <u>Allowed Claims of Professionals</u>: The Debtor has two Professionals whose

employment has been either approved by the Bankruptcy Court or is in the process of

being retained: (i) Debtor's counsel, DelBello Donnellan Weingarten Wise &

Wiederkehr, LLP and (ii) Debtor's real estate broker, Houlihan Lawrence. The Allowed

Administrative Claims of Professionals shall be paid in full, in Cash, from the

Distribution Fund, upon the later of (i) allowance by the Court pursuant to sections 330 or

506(c) of the Code or (ii) the Effective Date, unless otherwise agreed by such

Professional(s).

c)  <u>United States Trustee's Fees</u>: Under the Plan, all United States Trustee

statutory fees arising under 28 U.S.C. sections 1930 and 31 U.S.C. section 3717 prior to

the Confirmation Date shall be payable by the Debtor, in full, in Cash, by or shortly after

the Effective Date. Thereafter such fees shall be paid by the Debtor or LSF9, as

applicable,  in full, in Cash, in such amount as they are incurred in the ordinary course of

business by the Debtor.

d)  <u>Allowed Priority Claims</u>:  Allowed Priority Claims pursuant to 11 U.S.C.

section 507(a)(3)-(8), if any, shall be paid in full, in Cash on the Effective Date.

**3.2**    <u>**Class 1:**</u> The LSF9 Allowed Class 1 Secured Claim, together with any

unpaid state statutory judgment rate interest, costs and reasonable attorneys' fees accrued

thereon through the Closing, shall be paid in full, in Cash from the Distribution Fund or,

if applicable, by virtue of credit bid pursuant to section 363(k) of the Bankruptcy Code,

upon the Closing, after the payment of all unclassified Claims, including but not limited

to all Allowed Claims of Professionals and United States Trustee Fees, to be governed by

Section 4.2 of the Plan.  The LSF9 Allowed Secured Claim is Impaired and entitled to

vote on the Plan.

**3.3**    **Class 2:**  The Allowed Class 2 Claim shall be paid, in Cash, up to the full

amount of his Allowed Class 2 Claim, together with interest and reasonable legal fees to

the extent Allowed Under Section 506(b) of the Code, upon the Closing, from the

Distribution Fund after the payment of all unclassified Claims, Allowed Claims of

Professionals and Class 1 Claims in full. In the event there are insufficient sale proceeds

to pay the Class 2 Claim in full, the unpaid balance of the Class 2 Claim shall be treated

as an Allowed Class 3 Claim in accordance with section 506(a) of the Code. The Class 2

Claim is unimpaired and deemed to accept the Plan.

3.4    **Class 3:**  Holders of Allowed Class 3 Unsecured Claims shall receive a Pro

Rata portion of the remaining Distribution Fund, if any, after the payment of all

Administrative, Priority, post-Effective Date legal fees and  Class 1 and Cass 2 Allowed

Secured Claims in full, within ten (10) business days of the Sale Closing Date, up to

100% of their Allowed Claims, with no interest thereon. Class 3 Allowed Unsecured

Claims are impaired and are permitted to vote on the Plan.

**3.5**    **Class 4:**  Allowed Interests shall receive a Pro Rata portion of the

remaining proceeds of the Distribution Fund, based upon the particular percentage of

Interest held, after the payment of all classified and unclassified Allowed Claims and any

post-Effective Date legal fees and costs of the Debtor's estate. Class 4 Interests are

unimpaired and are deemed to have accepted the Plan.

**ARTICLE IV**
**MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

4.1     **Plan Funding.** This Plan shall be funded with the net proceeds of sale of

the Property. All distributions shall be made by the Disbursing Agent in accordance with

Article III herein, except that to the extent that a Claim becomes an Allowed Claim after

the Effective Date, within ten (10) days after the order allowing such Claim becomes a

Final Order.

4.2     **Means for Implementation: Sale or Auction.**

4.2(a)   Subject to the time deadlines set forth in this Article IV, TIME BEING OF

THE ESSENCE, the Debtor shall continue to market the Property post-Confirmation

Date and shall continue to engage a real estate broker to assist in such efforts, in order to

refinance or sell and liquidate the Property for the highest and best price on or before the

Sale Closing Date.  Upon Closing, the proceeds of refinance or sale shall be distributed to

holders of Claims and Interests in the same manner as provided for in Article III herein.

4.2(b)   In the event that a Sale Contract has not been executed on or before

January 31, 2018 or the Closing pursuant to a Sale Contract has not timely occurred on or

before February 28, 2018, the Debtor shall conduct a public auction of the Property on or

before April 30, 2018. If circumstances at the time warrant an extension of the Sale

Closing Date, the Debtor may request up to a thirty (30) day extension of either Sale

Closing Date from LSF9, the consent of which will not be unreasonably withheld.

4.2(c)   The sale of the Property, whether pursuant to a Sale Contract or public

auction shall be free and clear of any and all Claims, liens, encumbrances, equities and

Interests of any nature or kind (collectively, "Liens") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Code. Nothing set forth herein shall prevent a sale subject to certain liens, provided that the purchaser and the holder of the lien provide their respective consent in writing and the LSF9 Allowed Secured Claim is paid in full.

4.2(d)   At an auction conducted pursuant to subsections 4.2(b) above or otherwise, LSF9 shall be entitled to and have the absolute right to Credit Bid the full amount of the LSF9 Allowed Secured Claim.

4.2(e)   At an auction:

(i)   If LSF9 is the highest bidder, no deposit shall be required and the payment of the purchase price shall be deemed paid by LSF9 by the Credit Bid *except that* LSF9 shall also be responsible to pay, at Closing, any unpaid real estate taxes, sale closing costs, United States Trustee's Fees, for which it shall remain responsible though the closing of the Chapter 11 Case, the Allowed Claims of Professionals to the extent awarded by the Bankruptcy Court under either Sections 330 or 506(c) of the Code and the Post-Confirmation Fee Reserve (as defined below);

(ii)   If LSF9 (or its nominee) is not the highest bidder, immediately following the auction, the Third Party Highest Bidder, shall execute the Sale Contract which shall provide, among other things, that:  (i) a Closing of the sale will occur on or, at the option of the successful bidder, before the thirtieth day after the date of the auction; and (ii) that time is of the essence with respect to the Closing date.

(iii)     If the Third Party Highest Bidder defaults under the Sale Contract, the Disbursing Agent will be entitled to keep the deposit for distribution under the Plan;

(iv)     The Debtor shall reserve the second highest bidder. If LSF9 (or its nominee) does not purchase the Property at the auction and the Third Party Highest Bidder is unable to close on the Closing date, the Disbursing Agent shall contact the second highest bidder and enter into a Sale Contract of the amount of such bid; provided however, that the Sale Contract with the second highest bidder shall comply with the provisions of the Plan, which sale must Close within twenty-five (25) days after execution of such contract.

4.2(f)     Notwithstanding any of the foregoing, the Debtor shall have the absolute right to satisfy the LSF9 Allowed Secured Claim, through refinance, capital raise or any other means available, at any time up to the Closing, regardless of whether it should arise on or before the Sale Closing Date or as a result of a public auction thereafter.

4.3     The Plan expressly contemplates the sale of the Property on or after the Effective Date. The post-Effective Date sale shall therefore not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Code including (a) the transfer of the Property; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any contract, Lease or sublease; or (d) the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan.  All such transfers, assignments and sales will not be subject to any stamp tax, or other similar tax held to be a stamp tax or other similar tax by applicable law.

11

**ARTICLE V**
**RESOLUTION OF DISPUTED CLAIMS & RESERVES**

**5.1  Objections**.  The Debtor or a party in interest shall file all objections to the allowance of a Claim with the Bankruptcy Court, in writing, no later than the Confirmation Date.

**5.2  Amendment of Claims**.    A Claim may not be amended after the Effective Date unless agreed upon, in writing, by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

**5.3  Reserve for Disputed Claims**.  The Debtor shall reserve, on account of each holder of a Disputed Claim, in cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the date of distribution. The cash so reserved for the holder of such Disputed Claim, shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the Allowed Claim, regardless of when distribution thereon is made to or received by such holder.

**ARTICLE VI**
**GENERAL AND MISCELLANEOUS PROVISIONS**

**6.1    Modification of the Plan**.  The Debtor reserves the right, in accordance with Section 1127 of the Code, to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required; provided, however, the plan may not be modified without the written consent of LSF9**.**

**6.2**     **Article and Section References.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**6.3**     **Payment Dates.** If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day, and shall be deemed to have been completed timely.

**6.4**     **Notices.** Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

If to the Debtor:

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDEKEHR, LLP
One North Lexington Avenue
White Plains, New York 10601
Attn: Jonathan S. Pasternak, Esq.
Attn: Julie Curley, Esq.

The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.  Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

**6.5**     **Enforceability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or

operative effect of any and all other provisions of the Plan.

**6.6    Applicable Law.** Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

**6.7    Successors and Assigns.**  The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

**6.8    Reservation of Rights.**   Other than acknowledgement of the LSF9 Allowed Secured Claim, neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this chapter 11 case.

**6.9   U.S. Trustee Fees and Post Confirmation Reports.** The Debtor shall be responsible for filing post-confirmation reports with the Bankruptcy Court and the Disbursing Agent shall effectuate payment all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, on behalf of the Debtor or LSF9, as applicable, who shall remain responsible therefore, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

**6.10    Post Confirmation Management.**   The Debtor will continue to be managed post-Confirmation Date by Bruce Abbott, the Debtor's managing member. Mr.

Abbott shall not receive any compensation for his continued management services.

## ARTICLE VII
## EFFECT OF CONFIRMATION, DISCHARGE,
## SURRENDER AND CANCELLATION OF CLAIMS

**7.1    No Discharge Under the Plan.** Because the Plan contemplates liquidation

of the Debtor's assets, the Confirmation Order shall not operate as a discharge pursuant to

Section 1141(d)(1) of the Code.

**7.2    Exculpation**. Neither the Debtor nor any of its respective members,

shareholders, officers, directors, employees, attorneys, advisors, agents, representatives

and assigns (the "Released Parties") shall have or incur any liability to any entity for any

action taken or omitted to be taken in connection with or related to the formulation,

preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure

Statement or any contract, instrument, release or other agreement or document created or

entered into, or any other action taken or omitted to be taken in connection with the

chapter 11 case or the Plan and any related agreement or for bad faith, willful misconduct,

gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct,

unauthorized use of confidential information that causes damages, and/or ultra vires acts.

Notwithstanding any other provision hereof, nothing in Sections 7.2 or 7.3 hereof shall

(a) effect a release of any claim by the United States Government or any of its agencies or

any state and local authority whatsoever, including, without limitation, any claim arising

under the Internal Revenue Code, the environmental laws or any criminal laws of the

United States or any state and local authority against the Released Parties, nor shall

anything in Sections 7.2 or 7.3 hereof enjoin the United States or any state or local

authority from bringing any claim, suit, action or other proceedings against any of the

15

Released Parties referred to herein for any liability whatever, including, without

limitation, any claim, suit or action arising under the Internal Revenue Code, the

environmental laws or any criminal laws of the United States or any state and local

authority, nor shall anything in this Plan exculpate any party from any liability to the

United States Government or any of its agencies or any state and local authority

whatsoever, including liabilities arising under the Internal Revenue Code, the

environmental laws or any criminal laws of the United States or any state and local

authority against the Parties referred to herein, or (b) effect a release of any claim of LSF9

or any of its affiliates, including, without limitation, any claim arising out of or under any

guarantees executed in connection with the LSF9 Secured Claim (collectively, the

"Guarantees"), or any environmental law, nor shall anything in Sections 7.2 or 7.3 herein

enjoin LSF9 or its affiliates from bringing any claim, suit or action or other proceeding

under or arising out of the Guarantees or any environmental law, or (c) limit the liability

of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York

Rules of Professional Conduct.

     **7.3**    **Confirmation Injunction.** Effective on the Confirmation Date, all persons

who have held, hold or may hold Claims or Interests are enjoined from taking any of the

following actions against or affecting the Debtor or assets of the Debtor with respect to

such Claims, Interests or Administrative Claims, except as otherwise set forth in the Plan,

and other than actions brought to enforce any rights or obligations under the Plan or

appeals, if any, from the Confirmation Order:

     (i) Commencing, conducting or continuing in any manner, directly or indirectly,

any suit, action, arbitration, or other proceeding of any kind against the Debtor or the

assets of the Debtor regarding the Claims or Interests;

(ii) Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor;

(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the assets of the Debtor;

(iv) Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against the Debtor, the assets of the Debtor; and

(v) Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.

## ARTICLE VIII
## CONDITIONS PRECEDENT

8.1     <u>Conditions to Confirmation</u>. The following are conditions precedent to confirmation of the Plan, each of which may be satisfied or waived in accordance with section 8.3 of the Plan.

(a)     The Bankruptcy Court shall have approved by Final Order a disclosure statement with respect to the Plan.

(b)     The Confirmation Order shall provide for the conditional sale of the Property, whether pursuant to a Sale Contract or auction, free and clear of all Claims, liens and encumbrances.

8.2     <u>Conditions to Effective Date</u>. The following are conditions precedent to the Effective Date, all of which may be satisfied or waived in accordance with Article 8.3 of the Plan.

(a)     The Confirmation Order shall have been entered and have become a Final Order.

(b)     The Debtor shall have sufficient Cash necessary to pay Claims required to be paid on the Effective Date.

**ARTICLE IX**
**DISTRIBUTIONS AND UNCLAIMED PAYMENTS**

Except as otherwise provided herein, in the event any claimant fails to claim any distribution within four (4) months from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Disbursing Agent and the Debtor shall use their collective best efforts to obtain current addresses for all claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed cash shall be disbursed to Class 4 Interests, on a Pro Rata basis and according to the percentage of membership interest held by such Interest holder.

**ARTICLE X**
**DUTIES AND RIGHTS OF THE DISBURSING AGENT**

The Disbursing Agent shall make and effectuate all distributions required under the Plan. All fees and expenses of the Disbursing Agent shall be paid within twenty (20) days of presentation of invoice.

## ARTICLE XI
## POST-CONFIRMATION ACTIVITIES OF THE DEBTOR

**11.1**    The Debtor shall continue its efforts to market the Property for sale and

upon the closing of such sale, the net proceeds thereof shall be distributed in accordance

with the terms of this Plan.

**11.2**    Once the Debtor has liquidated the Property, it shall cause "final" tax

returns to be filed with New York State Department of Taxation and Finance as well as

the Internal Revenue Service and shall file such additional documents as are necessary to

cause the formal dissolution of the Debtor with the New York State, Secretary of State.

**11.3    Post-Confirmation Date Fees and Reserve.** The Debtor or LSF9, as

applicable,  shall pay all post-Confirmation Date fees and expenses to the Debtor's

professionals within twenty (20) days of presentment of invoice. The Debtor or LSF9, as

applicable, shall reserve the amount of $25,000 (the "Post-Confirmation Fee Reserve") at

Closing for the payment of post-Confirmation date fees and expenses of the Debtor's

counsel and the Disbursing Agent.

## ARTICLE XII
## EVENTS OF DEFAULT

**12.1**    An Event of Default shall occur if (a) the deadlines set forth for the sale

and Closing of the Property set forth in Article IV are not met, or (b) the Disbursing

Agent shall fail to make any payment when due or (c) the Debtor shall fail to comply with

any other material terms of this Plan, and written notice of same has been provided to the

Debtor, Disbursing Agent and the Bankruptcy Court.

**12.2**    Following an Event of Default, if such Default has not been cured within

ten (10) days thereafter, (a) LSF9 may set a sale pursuant to Sections 363 and 1123(B)(4)

of the Code with the right to Credit Bid the full amount of the LSF9 Allowed Secured

Claim, subject to the payment requirements of Section 4.2(e) of the Plan; and (b) any

holder of a Claim, payment of which is in default, shall have the right to commence an

action against the Debtor in the Bankruptcy Court or United States District Court to

compel payment.

**ARTICLE XIII**
**<u>EXECUTORY CONTRACTS</u>**

13.1    The Debtor has no executory contracts.

**ARTICLE XIV**
**<u>RETENTION OF JURISDICTION</u>**

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)  To determine all controversies relating to or concerning the allowance of and/

or distribution on account of such Claims or Interests upon objection thereto which may

be filed by any party in interest;

(b)  To determine requests for payment of Claims entitled to priority under

Section 507(a)(2) of the Code, including any and all applications for compensation for

professional and similar fees

(c)  To determine any and all applications, adversary proceedings, and contested

or litigated matters over which the Bankruptcy Court has subject matter jurisdiction

pursuant to 28 U.S.C Sections 157 and 1334;

(d)  To determine all disputed, contingent or unliquidated Claims and all disputed

Interests;

(e)  To determine requests to modify the Plan pursuant to Section 1127 of the

20

Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or

Confirmation Order to the extent authorized by the Code;

(f)  To make such orders as are necessary or appropriate to carry out the

provisions of the Plan;

(g)  To resolve controversies and disputes regarding the interpretation or

enforcement of the terms of the Plan;

(h)   To determine any and all pending motions and applications for assumption or

rejection of executory contracts and leases and the allowance and classification of any

Claims resulting from the rejection of executory contracts and leases;

(i)      To resolve any disputes which may arise concerning the sale or auction of

the Property or satisfaction of the LSF9 Allowed Secured Claim as required under the

Plan;

(j)      To determine such other matters as may be provided for in the order of the

Bankruptcy Court confirming the Plan or as may be authorized under the provisions of

the Bankruptcy Code; and

(k)  To enter a final decree closing this chapter 11 case.

Dated:  Larchmont, New York
       November 21, 2016

LIFSCHULTZ ESTATE MANAGEMENT LLC

By:___*/s/ Bruce Abbott*_____
       Brice Abbott, Managing Member

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDEKEHR, LLP
*Attorneys for the Debtor*

By:     */s/ Jonathan S. Pasternak*
       Jonathan S. Pasternak, Esq.
       One North Lexington Avenue
       White Plains, New York 10601
       (914) 681-0200