DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDEKEHR, LLP
*Attorneys for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Julie C. Curley, Esq.


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                              Chapter 11
                                                                       Case No. 16-23144(RDD)
LIFSCHULTZ ESTATE MANAGEMENT LLC,

                                          Debtor.
------------------------------------------------------------X

## SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN


     Lifschultz Estate Management LLC (the "Debtor") hereby proposes the following
Second Amended Liquidating Chapter 11 Plan pursuant to the provisions of Title 11 of
Chapter 11 of the United States Code.

## ARTICLE I
## DEFINITIONS

     For the purposes of this Plan, and the Disclosure Statement filed by the Debtor,
the following terms shall have the respective meanings set forth below (such meanings to
be equally applicable to the singular and plural forms of the terms defined, unless the
context otherwise requires):

    1.1     "Administrative Claims" shall mean all costs and expenses of administration
of the chapter 11 case Allowed under sections 503(b) or 330(a) of the Code and that are
entitled to priority under section 507(a)(2) of the Code.

1

1.2     "Allowed" shall mean that portion of a Claim or Interest that, (i) has been timely filed with the Bankruptcy Court and is liquidated in amount and has not been objected to; (ii) has been listed by the Debtor in the Schedules as being neither contingent, unliquidated nor disputed; or (iii) has been allowed by a Final Order of the Bankruptcy Court.

1.3     "Bankruptcy Code" shall mean Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Case.

1.4     "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, White Plains Division.

1.5     "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Case.

1.6     "Broker" shall mean any duly licensed professional real estate broker engaged by the Debtor, whose retention was approved by the Bankruptcy Court and provided whose agreement has not expired prior to the Sale Contract date.

1.7     "Cash" shall mean legal tender of the United States of America or cash equivalents.

1.8     "Chapter 11 Case" shall mean the above captioned proceeding.

1.9     "Claim" is defined in section 101(5) of the Code, and shall include, without limitation, any claims of whatsoever type or description against the Debtor, any claim for pre-petition interest, post-petition interest or contingent interest, any claim against the

2

Debtor arising out of the rejection of executory contracts, any claim against the Debtor arising from the recovery of property under sections 550 and 553 of the Code and any claim against the Debtor that does not arise until after the commencement of the chapter 11 case for a tax entitled to priority under section 507(a) of the Code.

1.10    "Closing" shall mean the closing on the refinance or sale of the Property, whether such sale is effectuated through a Sale Contract or auction.

1.11    "Code" shall mean the Bankruptcy Code, Title 11 U.S.C. section 101 et. seq. as amended from time to time and applicable to this case.

1.12    "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.13    "Confirmation Order" shall mean the order of the Bankruptcy Court pursuant to section 1129 of the Code confirming the Plan.

1.14    "Credit Bid" shall mean the rights of (a) LSF9 (as defined below) under section 363(k) of the Code, to bid all or a portion of the LSF9 Allowed Secured Claim at the auction to be conducted pursuant to Articles III and IV of the Plan and (b) Lawrence Lifschultz, to the extent his Claim is Allowed after adjudication of the Debtor's pending Claim objection and subject to payment in full of the Class 1 and 2 Allowed Secured Claims.

1.15    "Debtor" shall mean Lifschultz Estate Management LLC.

1.16    "Disbursing Agent" shall mean DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, who shall act in such capacity in order to effectuate the payment of distributions under the Plan.

1.17    "Disputed" shall mean a Claim or Interest, or any portion of a Claim or

Interest, that is not Allowed.

1.18     "Distribution Fund" shall mean the net proceeds of sale or refinance of the

Property.

1.19     "Effective Date" shall mean the date upon which the Confirmation Order

becomes a Final Order.

1.20     "Final Order" shall mean an order or judgment which has not been stayed

and as to which order or judgment the time to appeal or seek review or rehearing has

expired and as to which no appeal, petition for review or rehearing is pending or in the

case of an appeal, any such appeal or petition for review, rehearing or certiorari has been

dismissed.

1.21     "Impaired" shall mean a Claim or class of Claims that is impaired within the

meaning of section 1124 of the Bankruptcy Code.

1.22     "Interest" shall mean the rights of the members of the Debtor.

1.23     "LSF9" shall mean LSF9 Master Participation Trust.

1.24     "LSF9 Allowed Secured Claim" shall mean the Secured Claim of LSF9 in

the Allowed amount of $10,470,847.45 as of the Petition Date, plus accrued per diem

interest at the statutory state judgment rate of 9% per annum from and after the Petition

Date until paid, plus its costs and reasonable attorneys' fees, which Claim is secured by a

lien on and against the Property.

1.25     "Petition Date" shall mean August 23, 2016.

1.26     "Plan" shall mean this Liquidating Chapter 11 Plan and any amendments

hereto or modifications hereof made in accordance with the provisions of the Code.

1.27     "Priority Claim" shall mean a Claim, other than an Administrative Claim,

that is entitled to priority under section 507 of the Code.

1.28    "Pro Rata" shall mean proportionally according to the total amount of Allowed Claims or Allowed Equity Interests in a particular Class.

1.29    "Professionals" shall mean those persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Confirmation Date pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation has been Allowed by the Bankruptcy Court pursuant to sections 503(b)(2), (4) or 506(c) of the Code.

1.30    "Property" shall mean the real property and improvements hereon located at 220 Hommocks Road, Larchmont, New York.

1.31    "Sale Closing Date" shall mean a date that is thirty (30) days after execution of the Sale Contract.

1.32    "Sale Contract" shall mean a written agreement entered into between the Debtor and a third party in an amount not less than the LSF9 Allowed Secured Claim as of the Sale Closing Date. The Sale Contract shall provide for a deposit that is no less than five percent (5%) of the purchase price, to be held by the Disbursing Agent, unless LSF9 (or its nominee) is the successful bidder at an auction. The deposit shall be made in cash or official bank, certified or cashiers check (collectively, "Acceptable Funds") and shall be delivered to the Disbursing Agent upon execution of the Sale Contract.

1.33    "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by Section 521 of the Code and Bankruptcy Rule 1007, and all amendments thereto.

1.34    "Secured Claim" shall mean a Claim secured by a valid, perfected and enforceable lien in the assets of the Debtor, to the extent of the value of the interest of the holder of such Secured Claim in such assets as determined by the Bankruptcy Court pursuant to section 506(a) of the Code or acknowledged by the Debtor in writing or provided for in this Plan.

1.35    "Third Party Highest Bidder" shall mean a party other than LSF9 (or its nominee) who is the highest bidder at an auction conducted pursuant to Article 4.2 of the Plan.

1.36    "Unsecured Claim" shall mean any Claim that is not an Administrative Claim, Priority Claim or Secured Claim including, without limitation, Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

All holders of Claims and Interests against the Debtor, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, whether Allowed or not, shall be bound by the provisions of the Plan and are hereby classified as follows:

**Class 1**: shall consist of the Allowed Secured Claims of the Town of Mamaroneck.

**Class 2:** shall consist of the Allowed Secured Claim of LSF9.

**Class 3:** shall consist of the Allowed Secured Claim of Lawrence Lifschultz, if any, to the extent provided for by section 506(a) of the Code.

**Class 4:** shall consist of all Allowed Unsecured Claims, including any deficiency Claims of Lawrence Lifschultz pursuant to section 506(a) of the Code.

6

**Class 5:** shall consist of all Allowed Interests in the Debtor.

In accordance with section 1123(a)(1) of the Code, Administrative Claims and Priority Claims have not been classified and thus are excluded from these Classes.

## ARTICLE III - TREATMENT OF CLAIMS UNDER THE PLAN

**3.1 Satisfaction of Claims.** The treatment of and consideration to be received by holders of Allowed Claims shall be in full satisfaction of their respective Claims against the Debtor.

a) Allowed Administrative Claims other than Claims of Professionals:  The Debtor shall pay these Allowed Administrative Claims other than the claims of Professionals in full, in Cash, on the Effective Date. Notwithstanding, if LSF9 is the successful purchaser at public auction, it shall be responsible to pay, at the sale Closing date, all unpaid post-Petition real estate taxes and closing costs.

b) Allowed Claims of Professionals: The Debtor has two Professionals whose employment has been either approved by the Bankruptcy Court or is in the process of being approved: (i) Debtor's counsel, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP and (ii) Debtor's real estate broker, Houlihan Lawrence, whose term expires on or before December 1, 2017.  The Debtor shall pay the Allowed Administrative Claims of Professionals in full, in Cash upon the later of (i) allowance by the Court pursuant to sections 330 of the Code or (ii) with respect to the Broker, on the Sale Closing Date from the Sale Contract proceeds in the event that the Debtor enters into a Sale Contract with a purchaser other than LSF9 on or before December 1, 2017, unless otherwise agreed by such Professional(s).  Any professional fees incurred after the Effective Date by the Professionals shall be paid by the Debtor or its principals in the

ordinary course or out of the Distribution Fund.  Notwithstanding the foregoing, in the

event that LSF9 is the successful bidder at public auction via credit bid, it shall be

obligated at the Sale Closing Date to pay no more than $10,000 of any outstanding fees

and expenses of Debtor's counsel.

c) United States Trustee's Fees: Under the Plan, all United States Trustee

statutory fees arising under 28 U.S.C. sections 1930 and 31 U.S.C. section 3717 prior to

the Confirmation Date shall be payable by the Debtor, in full, in Cash, on the Effective

Date. Thereafter such fees shall be timely paid by the Debtor or LSF9, if the Debtor is

unable to pay such fees, in full, in Cash, in such amount as they are incurred in the

ordinary course of business by the Debtor.

d) Allowed Priority Claims:  Allowed Priority Claims pursuant to 11 U.S.C.

section 507(a)(3)-(8), if any, shall be paid in full, in Cash on the Effective Date.

**3.2    Class 1:** The Town of Mamaroneck Allowed Class 1 Secured Claim,

together with any unpaid statutory late fees, penalties, interest, costs and reasonable

attorneys' fees accrued thereon through the Closing, shall be paid in full, in Cash from

the Distribution Fund upon the Closing. In the event that LSF9 is the successful bidder at

public auction via credit bid, it shall be obligated to pay Class 1 Claims in full. The Class

1 Allowed Secured Claim is Impaired and entitled to vote on the Plan.

**3.3    Class 2**:  The LSF9 Allowed Class 2 Secured Claim, together with any

unpaid state statutory judgment rate interest, costs and reasonable attorneys' fees accrued

thereon through the Closing, shall be paid in full, in Cash to the extent available from the

Distribution Fund or, if applicable, by virtue of credit bid pursuant to section 363(k) of

the Bankruptcy Code, upon the Closing. The LSF9 Allowed Secured Claim is Impaired

and entitled to vote on the Plan.

        **3.4**     **Class 3:**  The Class 3 Secured Claim of Larry Lifschultz, to the extent

Allowed (a) after determination of the Debtor's Claim objection (b) under Section 506(a)

of the Bankruptcy Code, shall be paid, in Cash, up to the full amount of his Allowed

Class 3 Claim, together with interest and reasonable legal fees to the extent Allowed

Under Section 506(b) of the Code, upon the Closing, from the Distribution Fund after the

payment of all unclassified Claims, Allowed Claims of Professionals and Class 1 and

Class 2 Claims in full. In the event, there are insufficient sale proceeds to pay the

Allowed Class 3 Claim in full, the unpaid balance of the Allowed Class 3 Claim shall be

treated as an Allowed Class 4 Claim in accordance with section 506(a) of the Code. The

Class 3 Claim is Impaired and entitled to vote on the Plan.

        **3.5**     **Class 4:**  Holders of Allowed Class 4 Unsecured Claims shall receive a Pro

Rata portion of the remaining Distribution Fund, if any, after the payment of all

Administrative, Priority, post-Effective Date legal fees and Class 1, Class 2 and Class 3

Allowed Secured Claims in full, within ten (10) business days of the Sale Closing Date,

up to 100% of their Allowed Claims, with no post-Petition Date interest thereon. Class 4

Allowed Unsecured Claims are impaired and are permitted to vote on the Plan.

        **3.6**     **Class 5:**  Allowed Interests shall receive a Pro Rata portion of the

remaining proceeds of the Distribution Fund, based upon the particular percentage of

Interest held, after the payment of all classified and unclassified Allowed Claims and any

post-Effective Date legal fees and costs of the Debtor's estate. Class 5 Interests are

unimpaired and are deemed to have accepted the Plan.

## ARTICLE IV
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**4.1**    **Plan Funding.** This Plan shall be funded with the net proceeds of sale of

the Property. All distributions shall be made by the Disbursing Agent in accordance with

Article III herein, except that to the extent that a Claim becomes an Allowed Claim after

the Effective Date, within ten (10) days after the order allowing such Claim becomes a

Final Order.

**4.2**    **Means for Implementation: Sale or Auction.**

4.2(a)   Subject to the time deadlines set forth in this Article IV, TIME BEING OF

THE ESSENCE, the Debtor shall continue to market the Property Post-Confirmation

Date and shall continue to engage a real estate broker to assist in such efforts, in order to

refinance or sell and liquidate the Property for the highest and best price.  Upon Closing,

the proceeds of refinance or sale shall be distributed to holders of Claims and Interests in

the same manner as provided for in Article III herein.

4.2(b)

(i) In the event that a Sale Contract has not been executed on or before 150 days

after the Effective Date, the Debtor shall (a) enter into a contract of sale with LSF9 as a

stalking horse bidder in an amount no less than the total amount of the LSF9 Allowed

Secured Claim on or before 180 days after the Effective Date and (b) conduct a public

auction of the Property on or before 210 days after the Effective Date.

(ii) If a Sale Contract is executed on or before 150 days after the Effective Date

but that Sale Contract does not close within thirty (30) days of execution of the Sale

Contract, the Debtor shall comply with subsections (a) and (b) of section 4.2(b)(i), above.

(iii) The Debtor shall have the right to satisfy the LSF9 Allowed Secured Claim in

full up until the public auction.

4.2 (c)  The Debtor shall (i) timely pay the second half 2017 real estate taxes for the Property (ii) insure and generally maintain and upkeep the Property up until the Sale Closing Date and (iii) pay the administrative costs of the Debtor, including post-Effective Date professional fees and United States Trustee's Fees, incurred prior to the transfer of the Property as a condition to LSF9's agreement to, *inter alia*, the timelines set forth in section 4.2(b) above, subject to LSF9's obligation to pay Allowed Class 1 Claims, post-Petition unpaid real estate taxes, up to $10,000 in legal fees and expenses to Debtor's counsel, closing costs, and if necessary, United States Trustee fees, in the event that it is the successful purchaser at the public auction. In the event that the Debtor defaults under this subsection (c), the Debtor shall have 10 days from receipt of written notice from LSF9 to the Debtor and the United States Trustee to cure such default (the "Cure Period"). In the event that the Debtor fails to timely cure such default within the Cure Period, absent further extension upon consent of LSF9, the Debtor shall enter into a stalking horse contract of sale with LSF9 within 30 days of the expiration of the Cure Period and conduct a public auction within 30 days thereafter.

4.2(d)  The sale of the Property, whether pursuant to a Sale Contract or public auction shall be free and clear of any and all Claims, liens, encumbrances, equities and Interests of any nature or kind (collectively, "Liens") and shall constitute a sale under sections 105, 363(b), 363(f), 1123(b)(4) and 1129 of the Code. Nothing set forth herein shall prevent a sale subject to certain liens, provided that the purchaser and the holder of the lien provide their respective consent in writing and the LSF9 Allowed Secured Claim is paid in full.

4.2(e)   At an auction conducted pursuant to subsections 4.2(b) above or otherwise, LSF9 shall be entitled to and have the absolute right to Credit Bid the full amount of the LSF9 Allowed Secured Claim, subject to payment of Allowed Class 1 Claims, post-Petition unpaid real estate taxes, closing costs, up to $10,000 in Debtor's counsel's legal fees and expenses and, if necessary United States Trustee fees. In addition, Lawrence Lifschultz shall have the right to credit bid in his Allowed Class 3 Secured Claim, subject to payment in full of Allowed Class 1 and 2 Secured Claims.

4.2(f)   At an auction:

(i) The Debtor will follow reasonable bid procedures mutually agreed upon in good faith between the Debtor and LFS9;

(ii) If LSF9 is the highest bidder, no deposit shall be required and the payment of the purchase price shall be deemed paid by LSF9 by the Credit Bid *except that* LSF9 shall also be responsible to pay, at Closing, any unpaid post-Confirmation real estate taxes, Class 1 Claims, closing costs, up to $10,000 in Debtor's counsel's legal fees and expenses and, if necessary, outstanding United States Trustee's fees.

(ii)      If LSF9 (or its nominee) is not the highest bidder, immediately following the auction, the Third Party Highest Bidder, shall execute the Sale Contract which shall provide, among other things, that:  (i) a Closing of the sale will occur on or, at the option of the successful bidder, before the thirtieth (30th) day after the date of the auction; and (ii) that time is of the essence with respect to the Sale Closing Date.

(iii)    If the Third Party Highest Bidder defaults under the Sale Contract, the Disbursing Agent will be entitled to keep the deposit for distribution under the Plan;

(iv)    The Debtor shall reserve the second highest bidder. If LSF9 (or its nominee) does not purchase the Property at the auction and the Third Party Highest Bidder is unable to close on the Closing date, the Disbursing Agent shall contact the second highest bidder and enter into a Sale Contract of the amount of such bid; provided however, that the Sale Contract with the second highest bidder shall comply with the provisions of the Plan, which sale must Close within twenty-five (25) days after execution of such contract.

4.2(g)    Notwithstanding any of the foregoing, the Debtor and/or its principals shall have the absolute right to satisfy the LSF9 Allowed Secured Claim, through refinance, capital raise or any other means available, at any time up to the public auction.

4.3    The Plan expressly contemplates the sale of the Property on or after the Effective Date. The post-Effective Date sale shall therefore not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Code including (a) the transfer of the Property; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any contract, Lease or sublease; or (d) the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan.  All such transfers, assignments and sales will not be subject to any stamp tax, or other similar tax held to be a stamp tax or other similar tax by applicable law.

**ARTICLE V**

## <u>RESOLUTION OF DISPUTED CLAIMS & RESERVES</u>

**5.1  Objections**.  The Debtor or a party in interest shall file all objections to the allowance of a Claim with the Bankruptcy Court, in writing, no later than the Confirmation Date.

**5.2  Amendment of Claims**.    A Claim may not be amended after the Effective Date unless agreed upon, in writing, by the Debtor and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

**5.3  Reserve for Disputed Claims**.  The Debtor shall reserve, on account of each holder of a Disputed Claim, in cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the date of distribution. The cash so reserved for the holder of such Disputed Claim, shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim. The holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the Allowed Claim, regardless of when distribution thereon is made to or received by such holder.

# ARTICLE VI
## GENERAL AND MISCELLANEOUS PROVISIONS

**6.1    Modification of the Plan**.  The Debtor reserves the right, in accordance with Section 1127 of the Code, to amend or modify the Plan provided the Bankruptcy Court approves such modification, if required; provided, however, the plan may not be modified without the written consent of LSF9**.**

**6.2    Article and Section References.** Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**6.3    Payment Dates.** If any payment or act under the Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, the making of such payment or performance of such act may be completed on the next succeeding business day, and shall be deemed to have been completed timely.

**6.4    Notices.** Any notices to be forwarded under the Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

If to the Debtor:

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDEKEHR, LLP
One North Lexington Avenue
White Plains, New York 10601
Attn: Jonathan S. Pasternak, Esq.
Attn: Julie Curley, Esq.

The Debtor may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt. Any payment required under the Plan shall be deemed to have been paid on the date when such payment is mailed.

**6.5    Enforceability.** Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of the Plan.

**6.6    Applicable Law.** Except to the extent that the Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, except to the extent that other provisions of Federal law are applicable.

**6.7    Successors and Assigns.** The rights and obligations of any entity named or referred to in the Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

**6.8    Reservation of Rights.** Other than acknowledgement of the LSF9 Allowed Secured Claim, neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this chapter 11 case.

**6.9    U.S. Trustee Fees and Post Confirmation Reports.** The Debtor shall be responsible for filing post-confirmation reports with the Bankruptcy Court and the Disbursing Agent shall effectuate payment of all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717, on behalf of the Debtor who shall

remain responsible therefore, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

**6.10    Post Confirmation Management.**    The Debtor will continue to be managed post-Confirmation Date by Bruce Abbott, the Debtor's managing member. Mr. Abbott shall not receive any compensation for his continued management services.

## ARTICLE VII
## EFFECT OF CONFIRMATION, DISCHARGE, SURRENDER AND CANCELLATION OF CLAIMS

**7.1    No Discharge Under the Plan.** Because the Plan contemplates liquidation of the Debtor's assets, the Confirmation Order shall not operate as a discharge pursuant to Section 1141(d)(1) of the Code.

**7.2    Exculpation**. *Neither the Debtor nor any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the chapter 11 case or the Plan and any related agreement or for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 7.2 or 7.3 hereof shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever,*

*including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in Sections 7.2 or 7.3 hereof enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any of the Released Parties referred to herein for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) effect a release of any claim of LSF9 or any of its affiliates, including, without limitation, any claim arising out of or under any guarantees executed in connection with the LSF9 Secured Claim (collectively, the "Guarantees"), or any environmental law, nor shall anything in Sections 7.2 or 7.3 herein enjoin LSF9 or its affiliates from bringing any claim, suit or action or other proceeding under or arising out of the Guarantees or any environmental law, or (c) limit the liability of the Debtor's professionals to the Debtor pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

*7.3   Confirmation Injunction. Effective on the Confirmation Date, all persons who have held, hold or may hold Claims or Interests are enjoined from taking any of the following actions against or affecting the Debtor or assets of the Debtor with*

18

*respect to such Claims, Interests or Administrative Claims, except as otherwise set forth in the Plan, and other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order:*

*(i) Commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, arbitration, or other proceeding of any kind against the Debtor or the assets of the Debtor regarding the Claims or Interests;*

*(ii) Enforcing, levying, attaching, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the assets of the Debtor;*

*(iii) Creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the assets of the Debtor;*

*(iv) Asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly, against the Debtor, the assets of the Debtor; and*

*(v) Proceeding in any manner and any place whatsoever that does not conform to or comply with the provisions of the Plan.*

## ARTICLE VIII
## CONDITIONS PRECEDENT

8.1     <u>Conditions to Confirmation</u>. The following are conditions precedent to confirmation of the Plan, each of which may be satisfied or waived in accordance with section 8.3 of the Plan.

   (a)     The Bankruptcy Court shall have approved by Final Order a disclosure statement with respect to the Plan.

   (b)     The Confirmation Order shall provide for the conditional sale of the Property, whether pursuant to a Sale Contract or auction, free and clear of all Claims, liens and encumbrances.

8.2     <u>Conditions to Effective Date</u>. The following are conditions precedent to the Effective Date, all of which may be satisfied or waived in accordance with Article 8.3 of the Plan.

(a)     The Confirmation Order shall have been entered and have become a Final Order.

(b)     The Debtor shall have sufficient Cash necessary to pay Claims required to be paid on the Effective Date.

**ARTICLE IX**
**<u>DISTRIBUTIONS AND UNCLAIMED PAYMENTS</u>**

Except as otherwise provided herein, in the event any claimant fails to claim any distribution within four (4) months from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtor or to such other address as may be later designated by a creditor in writing. The Disbursing Agent and the Debtor shall use their collective best efforts to obtain current addresses for all claimants. The Disbursing Agent shall notify the Debtor of all returned distributions. All unclaimed cash shall be disbursed to Class 4 Interests, on a Pro Rata basis and according to the percentage of membership interest held by such Interest holder.

**ARTICLE X**
**DUTIES AND RIGHTS OF THE DISBURSING AGENT**

The Disbursing Agent shall make and effectuate all distributions required under the Plan. All fees and expenses of the Disbursing Agent shall be paid within twenty (20) days of presentation of invoice.

**ARTICLE XI**
**POST-CONFIRMATION ACTIVITIES OF THE DEBTOR**

**11.1** The Debtor shall continue its efforts to market the Property for sale and upon the closing of such sale, the net proceeds thereof shall be distributed in accordance with the terms of this Plan.

**11.2** Once the Debtor has liquidated the Property, it shall cause "final" tax returns to be filed with New York State Department of Taxation and Finance as well as the Internal Revenue Service and shall file such additional documents as are necessary to cause the formal dissolution of the Debtor with the New York State, Secretary of State.

**11.3** **Post-Confirmation Date Fees and Reserve.** The Debtor shall pay all post-Confirmation Date fees and expenses to the Debtor's professionals within twenty (20) days of presentment of invoice.

**ARTICLE XII**
**EVENTS OF DEFAULT**

**12.1** An Event of Default shall occur if (a) the deadlines set forth for the sale and Closing of the Property set forth in Article IV are not met, or (b) the Disbursing Agent shall fail to make any payment when due or (c) the Debtor shall fail to comply with any other material terms of this Plan, and written notice of same has been provided to the Debtor, Disbursing Agent and the Bankruptcy Court.

21

**12.2**    Following an Event of Default, if such Default has not been cured within

tfifteen (15) days of receipt by the Debtor and the United States Trustee of written notice

to cure thereafter, (a) the Debtor shall enter into a stalking horse contract of sale with

LSF9 no later than 30 days after the expiration of the cure period and set and conduct a

public auction sale pursuant to Sections 363 and 1123(B)(4) of the Code within 30 days

of execution of the stalking horse contract of sale with the right to Credit Bid the full

amount of the LSF9 Allowed Secured Claim, subject to the payment requirements of

Section 4.2(f) of the Plan; and (b) any holder of a Claim, payment of which is in default,

shall have the right to commence an action against the Debtor in the Bankruptcy Court or

United States District Court to compel payment.

**12.3**    Notwithstanding Article XIV, failure of the Debtor to perform any of its

obligations in section 12.2 shall permit, but not require, LSF9 to exercise any and all of

its rights to the fullest extent permitted under applicable non-bankruptcy law, including,

but not limited to, effectuate a foreclosure sale of the Property, without further order of

the Bankruptcy Court.

## ARTICLE XIII
## EXECUTORY CONTRACTS

13.1    The Debtor has no executory contracts.

## ARTICLE XIV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)  To determine all controversies relating to or concerning the allowance of and/

or distribution on account of such Claims or Interests upon objection thereto which may

22

be filed by any party in interest;

(b)  To determine requests for payment of Claims entitled to priority under

Section 507(a)(2) of the Code, including any and all applications for compensation for

professional and similar fees

(c)  To determine any and all applications, adversary proceedings, and contested

or litigated matters over which the Bankruptcy Court has subject matter jurisdiction

pursuant to 28 U.S.C Sections 157 and 1334;

(d)  To determine all disputed, contingent or unliquidated Claims and all disputed

Interests;

(e)  To determine requests to modify the Plan pursuant to Section 1127 of the

Code or to remedy any defect or omission or reconcile any inconsistencies in this Plan or

Confirmation Order to the extent authorized by the Code;

(f)  To make such orders as are necessary or appropriate to carry out the

provisions of the Plan;

(g)  To resolve controversies and disputes regarding the interpretation or

enforcement of the terms of the Plan;

(h)   To determine any and all pending motions and applications for assumption or

rejection of executory contracts and leases and the allowance and classification of any

Claims resulting from the rejection of executory contracts and leases;

(i)      To resolve any disputes which may arise concerning the sale or auction of

the Property or satisfaction of the LSF9 Allowed Secured Claim as required under the

Plan;

(j)      To determine such other matters as may be provided for in the order of the

Bankruptcy Court confirming the Plan or as may be authorized under the provisions of

the Bankruptcy Code;

(k)     If necessary, to implement any post-Effective Date sale of the Property,

including any issues and dispute arising therefrom; and

(l)  To enter a final decree closing the Chapter 11 Case.

Dated:  Larchmont, New York
          May 22, 2017

LIFSCHULTZ ESTATE MANAGEMENT LLC

By:___*/s/ Bruce Abbott*_____
          Brice Abbott, Managing Member

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDEKEHR, LLP
*Attorneys for the Debtor*

By:     */s/ Jonathan S. Pasternak*
          Jonathan S. Pasternak, Esq.
          One North Lexington Avenue
          White Plains, New York 10601
          (914) 681-0200